IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Terrence Bennett, | ) | C. A. No. 2:10-0762-MBS-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Georgetown County Detention;[1] | ) | |
| Mr. Baker; Mr. Pierson; | ) | |
| Director Lane Cribb; Major | ) | |
| Martin; Captain Ms. Wineglass, | ) | |
| | ) | |
| Defendants. | ) | |

This civil rights action under 42 U.S.C. § 1983[2] (West 1994 & Supp. 1998) brought by a prisoner proceeding pro se and in forma pauperis filed on March 25, 2010, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motions for summary judgment filed on July 19,

---

[1] On June 10, 2010, the Honorable Margaret B. Seymour, United States District Judge, issued an Order (Doc. #28) summarily dismissing as to Defendant Georgetown County Detention Center and without issuance and services of process.

[2] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

2010, and August 16, 2010, (Docket #'s 40 & 60) 28 U.S.C. §
636(b).

The plaintiff has failed to respond to any of the pending
dispositive motions, but instead has filed repeated motions for
extensions of time, to delay summary judgment, to strike, to
compel discovery, to subpoena witnesses and for sanctions. See,
Docket #'s 44, 46, 51, 52,53, 57, and 73.

The plaintiff was given two[3] explanations of dismissal and
summary judgment procedure as well as pertinent extracts from
Rules 12 and 56 of the Federal Rules of Civil Procedure similar
to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir.
1975)and an Order granting an additional ten days to respond.
(Docket #'s 22, 66 and 78). Thus it is clear the plaintiff knows
of his obligation to respond to the outstanding motions. (See,
Docket #'s 42, 51, 53, 22, 66 and 78).

The plaintiff, Terrence Bennett, named as defendants
Director Lane Cribb, Major Martin, Captain Wineglass, Mr. Baker
and Mr. Pierson. Apparently at the time of the matters
complained of here, Defendant Cribb was the Sheriff of Georgetown
County, Major Martin (apparently her real name is Morton, See,
Docket #40, Ex 1) was the Deputy Administrator of the Georgetown
County Jail, and Captain Wineglass was an employee of the

_____

[3] Apparently a third Roseboro Order was not issued in
conjunction with the July 19th motion. See, Docket #'s 40, 42 and
43.

2

Georgetown County Detention Center.[4]  According to affidavits before the court, Defendant Baker was the Postal Director at Kirkland Correctional Institution and Defendant Pierson, whose name apparently is spelled "Pearson," was at the times relevant here Acting SCDC Security Threat Group Coordinator.

The plaintiff alleges in his complaint that he was placed by an unspecified individual in an unsanitary cell at the Georgetown Detention Center and as a result he developed a staph infection. He complains that Defendant Baker, allowed his incoming mail to be re-directed to the STG (Strategic Threat Group) before delivery to him.  Finally he asserts he is suing "the entire STG Committee" for depriving him of due process, equal protection and freedom of speech. (Docket # 1).

The defendants Cribb, Martin and Wineglass filed a motion for summary judgment with various affidavits and exhibits on July 19, 2010, and Pierson and Baker filed a motion for summary judgment with affidavits and exhibits on August 16, 2010.  The thrust of the two motions is that the complaint fails to allege the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, and that the

---

[4] The complaint, the answer, the motion and the accompanying affidavits are vague as to the duties of Cribb and Wineglass. However Cribb is identified on public records as the Sheriff of Georgetown County and presumably could be the Director of the Georgetown County Detention Center.

plaintiff failed to exhaust administrative remedies, among other defenses.

As noted, the plaintiff has responded to these motions by filing a variety of other motions, <u>See</u>, Docket #'s 44, 46, 51, 52,53, 57, and 73, without specifically addressing the issues raised in the motions.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's] version of events ... differs substantially from [the appellee's,] ... courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the ... motion." <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks and alterations omitted).

Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element

essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by

a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendant argues that it has met its affirmative defense that the plaintiff failed to comply with the Prison Litigation Reform Act's (PLRA) requirement that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C. § 1997e(a); see also, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the defendant).

The Supreme Court has held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Accordingly, before a prisoner may proceed with his claims in a federal court, he must first properly exhaust his administrative remedies available through the SCDC grievance policy/process.

The court may take judicial notice of the SCDC grievance process. As noted in Jones v. Kay, No. 07-3480, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the SCDC grievance policy provides that

6

if, at the institutional level, the response to the grievance
exceeds the established time limits, the grievance will
automatically proceed to the next level of appeal where the
Inmate Grievance Coordinator may respond to the prisoner and
resolve his complaint. SCDC Policy GA-01.12 § 13.6.
Importantly, SCDC Policy GA-01.12 indicates that, "Under no
circumstances will the grievance process exceed 180 days."

At this point, it is unclear whether the plaintiff's
grievance concerning his mail has been resolved or forwarded for
appeal, or for that matter what has happened to his mail. The
only response of record has been that the letter in question was
forwarded to STG which is hardly a response to the grievance and
tells the plaintiff little more than the notice provided him
from the mailroom. A subsequent grievance on the same issue was
erroneously indicated dismissed as duplicative. When a prisoner
files a grievance and has not received a timely determination,
the grievance may be considered exhausted under the PLRA. As
the Seventh Circuit has observed: "we refuse to interpret the
PLRA 'so narrowly as to ... permit [prison officials] to exploit
the exhaustion requirement through indefinite delay in
responding to grievances.'" Lewis v. Washington, 300 F.3d 829,
833 (7th Cir. 2002); see also, Boyd v. Con. Corp. of America,
380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative
remedies are exhausted when prison officials fail to timely

respond to a properly filed grievance"), cert. denied, 544 U.S. 920, 125 S.Ct. 1639 (2005); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing that administrative remedies are deemed exhausted under the PLRA when prison officials fail to respond to inmate grievances); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

Since the only evidence with regard to the cell conditions claim can be read as either resolved or not exhausted, and since the letter claim may be deemed exhausted, the claims will be addressed on their merits.

## DISCUSSION

A review of the record and relevant case law indicates that this action should be dismissed for a multitude of reasons.

As to all defendants except Baker, the plaintiff's complaint is a littany of constitutional rights, including due process,

equal protection First Amendment, without specificity at to who violated his rights or what was done.

First, the plaintiff complains generally about the sanitary conditions of his cell, and that he suffered a staph infection as a result thereof. There is no dispute that the plaintiff's cell is as he described it, but there is no evidence that this condition violated any constitutionally protected standard.

In short, the plaintiff complained that worms came out of the sink in his cell and that when he complained about them, maintenance came to his cell and poured a fluid down his drain which forced more worms out of the sink.

It is well-settled that in order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977). Additionally, to state a § 1983 claim, a plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct. <u>See</u>, <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-372, 96 S.Ct. 598, 604 (1976). Further, vicarious liability theories such as respondeat superior are not available in § 1983 actions. <u>Vinnedge</u> at 928. The plaintiff has not established any personal involvement in a tort of constitutional magnitude on the part of any defendant.

## Defendant Cribb

The general rule is that the doctrines of vicarious liability or respondent superior do not operate in § 1983 claims. Monell v. Department of Social Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). To the contrary, liability under § 1983 arises only when a plaintiff can show that a defendant was "'personally responsible for a deprivation of a constitutional right.'" Zentmyer v. Kendall County, Ill., 220 F.3d 805, 811 (7th Cir. 2000) (quoting Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)). Absent a showing that the sheriff's action or inaction was affirmatively causally linked to the alleged unconstitutional behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference, no liability can accrue.

Although there is a limited exception to the prohibition against imposing liability on supervisory personnel in § 1983 cases under the doctrines of respondeat superior or vicarious liability which has been enunciated in cases such as Slakan v. Porter, 737 F.2d 368, 370-75 (4th Cir. 1984), that exception does not operate in the instant case to defeat summary judgment. The Slaken exception is inapplicable where, as here, no person who was personally responsible for the events about which Plaintiff

complains was named as a defendant and where there is no evidence
at all against Sheriff Cribb.   There is no evidence that
Defendant Cribb was aware of the allegedly unconstitutional
conditions of the Georgetown Detention Center.

Thus, it cannot be said that Plaintiff has shown any
"pervasive and unreasonable risk of harm from some specified
source ..." nor has he shown that Cribb's "corrective inaction
amounts to deliberate indifference or 'tacit authorization of the
offensive [practices],'" Slakan, 737 F.2d at 373, as required to
establish a viable claim of supervisory liability in § 1983
cases. See, Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).  Since
there is no evidence of any individual wrongdoing by a defendant
or potential supervisory liability for anyone else's wrongdoing
on the part of Sheriff Cribb, the mere fact that Defendant Cribb
holds his position is clearly not sufficient to sustain a viable
supervisory liability claim against him. Id.

On this record, Bennett is not entitled to relief under a
respondeat superior theory, Vinnedge v. Gibbs, 550 F.2d 926 (4th
Cir. 1977), nor can he meet the heavy burden of proof required to
establish supervisory liability. See, Slakan v. Porter, 737 F.2d
368 (4th Cir. 1984), cert. denied, 470 U.S. 1035 (1985).  It
appears that there is no genuine and material issue of fact which
must await decision by a fact finder and Defendant Cribb is

11

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(1)(C)(2).

### Defendant Martin (Morton)

By affidavit Defendant Martin (Morton) acknowledges that she was at all relevant times the Deputy Administrator of the Georgetown County Detention Center. She asserts that when the plaintiff filed a step one grievance concerning unsanitary conditions with regard to plumbing at the detention center, the grievance was forwarded to the maintenance department which responded by treating the problem. The plaintiff filed a subsequent grievance indicating that the corrective action had occurred, but complaining he was being treated differently for complaining about the conditions. (Motion for Summary Judgement, Exhibits 1, 6 and 7).

First, it appears that the plaintiff grieved the sanitary conditions and his grievance was answered by taking action to correct the condition of which he complained. Apparently he was satisfied with this remedy because there is no indication that he further grieved that condition while he was in Georgetown and did not pursue an appeal with regard to the sanitary conditions.

Second, there has been no constitutional deprivation. To establish a viable claim under 42 U.S.C. § 1983, the plaintiff must allege he was deprived of some constitutional right by a person acting under color of state law. Weller v. Dep't of Social

Services, 901 F.2d 387 (4th Cir. 1990). Here, the named defendant responded to the plaintiff's grievance about sanitary conditions. The factual accuracy that Martin (Morton) responded with effective action is uncontested. Plaintiff simply failed to state a claim, much less a claim of constitutional proportions, against this defendant.

A prisoner makes out a claim under the Eighth Amendment of the United States Constitution, See, U.S. Const. Amend. VIII, if he can establish that the prison personnel responsible for his care were deliberately indifferent to his serious needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). These requirements go beyond a showing of negligence, and require Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim... . Since routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Strickler v. Waters, 989 F.2d 1375, 1380 n. 3 (4th Cir. 1993) (internal quotations omitted). In addition, "to withstand

summary judgment on an Eighth Amendment challenge to prison
conditions a plaintiff must produce evidence of a serious or
significant physical or emotional injury resulting from the
challenged conditions." Id. at 1381; Shakka v. Smith, 71 F.3d
162, 166 (4th Cir. 1995).  To be actionable, there must be an
"extraordinary case of a palpable deprivation of the minimal
requirements of civilized existence in which an inference of
serious injury might be reasonable." Strickler, 989 F.2d at 1382.

In his complaint, Plaintiff attempts to suggest a causal
link between a staph infection he suffered and the conditions of
confinement he alleges were unsanitary.  However, his attempt
fails because Plaintiff is not a medical care provider and there
is no allegation or evidence that demonstrates that the alleged
infection could be considered serious.  To the contrary, the
defendants present the affidavit of Dr. Thomas Moore who states
based upon his medical experience and knowledge that staph
infection is not caused by maggots or worms and there is no
causal connection between the conditions of confinement
complained of and such an infection. (Docket #40 Motion for
Summary Judgement, Ex. 12).  Dr. Moore also reports that a review
of prison records reveals the plaintiff was treated without
incident for a MRSA infection on his leg.  There is no claim that
the infection was serious or that there were any residuals of the
condition.  Indeed the medical records submitted by the

14

defendants demonstrate that the condition resolved with routine medical treatment. (Docket #40 Motion for Summary Judgment, Ex. 13). This claim should fail.

### Defendant Wineglass

In his complaint, the plaintiff alleges no specific wrongdoing by Defendant Wineglass. As noted above in order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977).

A review of all of the documents submitted to the court reveals that Defendant Wineglass is only mentioned in the caption, and a general listing of defendants toward the end of the complaint. She also appears to be mentioned in a grievance filed with Defendant Martin (Morton) complaining about the maggots in his sink, and in grievances submitted to Wineglass asking for transfers to different cells and complaining about his treatment in general. (Docket #40 Summary Judgement Motion, Exhibits 7 and 9). There are no allegations that Defendant Wineglass acted personally with regard to any of the allegations of the complaint, except perhaps that she was told about the sink problems. For the same reasons as the claim against Defendant Martin (Morton) fails, the claim against Defendant Wineglass should fail.

## Defendant Baker

In his complaint, the plaintiff states, "The plaintiff also brings this suit against the postal Director Ms. Baker of the Kirkland Corrections for the involvement of allowing his incoming mail from his mother to be sent to STG without a valid reason." (Docket #1 Complaint ¶ 6). Attached to the complaint is a grievance filed by the plaintiff in which he complains, "I am very concerned about some <u>legal mail</u> that was sent to me on 6-30-09. From my mother Ms. Bennett." (Docket 1, Complaint Exhibit) (emphasis in original). He alleges that he talked to his mother who told him she sent no contraband, just paper work, which the plaintiff characterizes as "legal mail". In response to the grievance, it appears the plaintiff was advised that the letter was forwarded by prison officials to the STG group. The plaintiff does not allege that he took any action following this response to his grievance, and it appears he may not have exhausted his administrative remedies.

In a motion for appointment of counsel, the plaintiff avers that he was ignorant of the grievance procedure.[5]

---

[5] An affidavit from the SCDSC Chief of Inmate Grievances indicates the plaintiff filed ten grievances concerning mail, ranging from the letter from his mother referenced in his complaint to denial of an "XXL Magazine." These grievances were all denied for various reasons including the plaintiff's failure to follow proper grievance procedures, because they were duplicate grievances, because they were untimely, because the mail was being investigated by STG or in the case of the magazine, because that particular issue had been disapproved.

Nevertheless, Defendant Baker avers by affidavit that SCDC policy authorizes Mailroom Employees to open and inspect incoming mail unless on the outside of the envelope there is an indication that mail is coming from an attorney, a court, a judge, or with a law firm's return address.  Further the policy provides that if the mail contains questionable material which requires further review the mailroom employee must forward it to the STG and advise the inmate of such action. (Docket # 60-2 ¶¶ 4-5).

Defendant Baker further avers that he has reviewed the notice sent to the plaintiff concerning the letter from his mother and asserts that the correspondence involved showed no indication of being legal mail.  He confirmed that the envelope indicated the correspondence was from the plaintiff's mother. Further Baker avers that he personally inspected the mail and found it to contain material which in his opinion required the mail be forwarded to STG. (Docket 60-2 ¶¶ 6-8).

A prisoner enjoys a First Amendment right to receive and send mail, see, Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107

---

Further the Chief avers that none of these grievances was appealed. (Docket # 60-2, Coleman Affidavit).  Only the letter from his mother is subject to any complaint here.

S.Ct. 2254, 96 L.Ed.2d 64 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." <u>Thornburgh</u>, 490 U.S. at 408. Thus, a prisoner's First Amendment right to receive mail is subject "to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security." <u>See</u>, <u>Kensu v. Haigh</u>, 87 F.3d 172, 174 (6th Cir. 1996); <u>see</u> <u>also</u>, <u>Gaines v. Lane</u>, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding against First Amendment challenges regulations that authorize prison officials to inspect incoming or outgoing non-legal mail for contraband).

It appears here that Defendant Baker followed prison regulations, including giving the plaintiff notice of the redirection of the letter from his mother to the STG. Nothing more was required of Baker under the prison regulations or the Constitution. Whether because of the plaintiff's failure to exhaust administrative remedies or failure to state a claim against Baker, this claim should be dismissed.

## Defendant Pierson (Pearson)

The plaintiff alleges no conduct by Defendant Pierson (Pearson).  As already noted several times, to establish a viable claim under 42 U.S.C. § 1983, the plaintiff must allege he was deprived of some constitutional right by a person acting under color of state law.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).  Here he alleges no conduct by this defendant.

In his complaint, the plaintiff writes, "Plaintiff is also suing the entire STG Committee for a violation of his due process and equal protection of the law and the violation of freedom of speech1st Constitutional Right dated 6/20 -2009" (Docket #1 Complaint ¶ 7).

Of course, the STG Committee is not an entity subject to being sued, and even at that he does not allege any conduct by the Committee or any member of the Committee which violates a constitutional right.  Defendant Pierson (Pearson) by affidavit asserts that he had no knowledge of the plaintiff or the incident with the plaintiff's mother's letter until he was served with this law suit.  He has never seen the letter or had any contact with the plaintiff.  At all times relevant hereto, Defendant Pierson (Pearson) was Acting SCDC Security Threat Group Coordinator and served in a supervisory role over the various institutional STG Committee members.

The doctrines of vicarious liability or respondent superior do not operate in § 1983 claims. <u>Monell v. Department of Social Serv.</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); <u>Vinnedge v. Gibbs</u>, 550 F.2d 926 (4th Cir. 1977). Liability under § 1983 arises only when a plaintiff can show that a defendant was "'personally responsible for a deprivation of a constitutional right.'" <u>Zentmyer v. Kendall County, Ill.</u>, 220 F.3d 805, 811 (7th Cir. 2000) (quoting <u>Vance v. Peters</u>, 97 F.3d 987, 992 (7th Cir. 1996)).

Absent a showing that action or inaction by Defendant Pierson (Pearson) was affirmatively causally linked to some unconstitutional behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference, no liability reaches the defendant.

Here there is no such action or inaction alleged, and no evidence of any grievances filed against defendant Pierson (Pearson). Accordingly this action should be dismissed as to him.

## CONCLUSION

It appearing on the record before the court that the plaintiff has failed in his burden to establish exhaustion of administrative remedies or to state claims of a constitutional nature against any defendant, or to point to facts evidencing a

genuine issue for trial, Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u>,

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986), it is

recommended that summary judgment in favor of the defendants be

granted and it is recommended that all other outstanding motions

should be stricken as moot.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

November 4, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).